Gary BLAYLOCK et al.,
Plaintiffs-Appellees,

v.

CHEKER OIL COMPANY, an Illinois
Corporation, Defendant-Appellant.

Nos. 76–2149, 76–2294.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1976.

Decided Dec. 2, 1976.

Sherwin J. Malkin, Malkin & Gottlieb, Chicago, Ill., for appellant.

Samuel D. Carpenter, Verdervoort, Cooke, McFee, Christ, Carpenter & Fisher, Battle Creek, Mich., for appellees.

Before EDWARDS, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

Cheker Oil Company (Cheker) appeals from a preliminary injunction and an order holding it in contempt of the preliminary injunction.

This action was filed on November 24, 1975 by three lessees of service stations owned by Cheker and located in neighboring communities in Michigan. The gravamen of the complaint was that Cheker began enforcing lease provisions which required the payment of minimum monthly rentals only after the energy crisis of 1973–1974 created a severe shortage of gasoline. It was charged that although the leases had always required such payments Cheker had not previously enforced these provisions. The complaint charged that Cheker was in violation of a regulation issued by the Federal Energy Administration (FEA) pursuant to the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 et seq. (EPAA), as amended. Jurisdiction was also asserted under the Sherman Act, the Clayton Act and diversity of citizenship.

The FEA regulation referred to in the complaint requires that suppliers deal with purchasers of allocated products in accordance with "normal business practices in effect during the base period. . . ." 10 C.F.R. § 210.62(a). Sub-section (c) of Section 210.62 provides, in part:

(c) Any practice which constitutes a means to obtain a price higher than is permitted by the regulations in this chapter or to impose terms or conditions not customarily imposed upon the sale of an allocated product is a violation of these regulations. . . .

The complaint stated that the plaintiffs had filed a complaint with the Chicago office of the Federal Energy Office (FEO) but that a preliminary injunction was required to prevent irreparable injury during the pendency of the FEO proceedings.

The complaint also charged, without specificity, that Cheker's actions constituted violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; and of Section 3 of the Clayton Act, 15 U.S.C. § 14. In another count recovery was sought for breach of contract. The leases between the three plaintiffs and Cheker were filed as exhibits with the complaint. The identical (except as to amount of minimum rent) leases were for one year and all expired on August 31, 1974. Each provided for a rental of two cents per gallon for each gallon of gasoline sold on the premises, with a minimum stated monthly rental. Rent was payable daily, with any deficiency in the minimum rent for a given month being due on the first day of the following month. Each lessee was required to make a deposit of $1,000 with Cheker as security for faithful performance of the terms of the lease. No lessee was required to purchase petroleum products from Cheker, and Cheker was not required to furnish any such products. The leases contained no provisions with respect to prices in the event purchases were made by the lessees from Cheker.

In the complaint the plaintiffs charged that Cheker violated a stipulation of the leases which provided—

8. OPERATION OF LESSEE'S BUSINESS:

None of the provisions of this lease shall be construed as reserving or granting to LESSOR any right to exercise any control over the business or operations of LESSEE conducted on the leased premises, or to direct in any respect the manner in which such business and operations shall be conducted. The entire control and direction of LESSEE'S business on the leased premises shall be and remain with LESSEE. . . .

Among other things it was alleged that Cheker had dictated prices that the plaintiffs were required to charge for retail sales of gasoline.

The parties attempted to negotiate a settlement of their differences, but these negotiations were not successful, and the plaintiffs filed a "Petition for Preliminary Injunction Order" on February 4, 1976. The prayer of this petition was that Cheker be required to continue to sell and deliver gasoline to the plaintiffs at prices and terms discussed but never agreed to by the parties. The basic disagreement was whether prices to the plaintiffs should be "pegged" to those charged at a single company-operated Cheker station or to the average price charged by four such stations. Before the district court acted on the petition for preliminary injunction the plaintiffs filed an amended complaint charging in great detail a conspiracy between Cheker and Marathon Oil Company to create a monopoly in violation of the Sherman Act, a "tying arrangement" by Cheker in violation of the Clayton Act and price discrimination in violation of the Robinson-Patman Act [Section 2(a) of the Clayton Act as amended, 15 U.S.C. § 13(a)]. Though the district court did not sign an order permitting the amendment under Rule 14, Fed.R.Civ.P., it is obvious that the court treated the amendment as properly filed.

After Cheker had responded to the petition for a preliminary injunction the district court conducted a hearing. On August 17, 1976 a preliminary injunction issued, effective ten days thereafter. The injunction is reproduced as Exhibit 1 in the appendix to this opinion. Cheker filed a notice of appeal and a motion for stay of paragraph (d) of the preliminary injunction pending appeal. On September 3, 1976 the plaintiffs filed a motion for contempt order. Following a hearing the district court issued a contempt order which is reproduced as Exhibit 2 in the appendix to this opinion. The notice of appeal was amended to include an appeal from the contempt order.

The district court denied Cheker's motion for stay of paragraph (d) of the preliminary injunction. The parties agreed at a hearing before a judge of this court to maintain the *status quo* pending appeal. The issues related to the preliminary injunction and contempt order were argued at a consolidated hearing before this panel.

THE PRELIMINARY INJUNCTION

In its findings of fact and conclusions of law the district court held that there was a likelihood that the plaintiffs would be able to succeed on their breach of contract claim under Michigan law and on their claim for violation of the federal energy regulations. Paragraphs (a), (b) and (c) of the preliminary injunction were based on these findings and conclusions. Paragraph (d) of the preliminary injunction, which deals with prices, was based on the conclusion of the district court that the plaintiffs had made such a showing of Robinson-Patman Act violations as to create a likelihood of success on this issue.

Without in any way expressing or intimating an opinion on the merits of the issues related to the duty of plaintiffs to pay minimum rents, the court concludes that the district court did not act improvidently in including paragraphs (a), (b) and (c) in the preliminary injunction. Though the leases did not require Cheker to sell and deliver gasoline to the plaintiffs, it is reasonable to require that deliveries may not be withheld due to nonpayment of minimum rent pending determination of the minimum rent issue in light of the emergency legislation and regulations relied upon by the plaintiffs.

■ The general function of a preliminary injunction is to maintain the *status quo* pending determination of an action on its merits. *Washington Capitols Basketball Club, Inc. v. Barry,* 419 F.2d 472 (9th Cir. 1969); *District 50 United Mine Workers v. International Union,* 134 U.S.App.D.C. 34, 412 F.2d 165 (1969); *Fall v. Copperweld Speciality Steel Co.,* 380 F.Supp. 1277 (N.D. Ohio 1974). By including paragraph (d) in the preliminary injunction the district court went far beyond freezing the parties in their positions at the time this action was commenced. The "last, uncontested status preceding commencement of the controversy," *Washington Capitols v. Barry, supra,* involved no agreement with respect to pricing of gasoline.

■ In order to be entitled to a preliminary injunction a party must demonstrate a substantial likelihood of success on the merits when the case is tried. *Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080 (6th Cir. 1975); *Garlock v. United Seal, Inc.,* 404 F.2d 256 (6th Cir. 1968). The inclusion of paragraph (d) in the preliminary injunction was based on the district court's determination that the plaintiffs had demonstrated a violation by Cheker of the Robinson-Patman Act. The district court predicated this holding on evidence that Cheker sold gasoline to customers at five company-operated stations, located from two to thirty-two miles from plaintiffs' stations, at prices below the prices at which plaintiffs could sell at a profit after a reasonable mark-up of Cheker's prices to them. Our review of authoritative decisions leads to the conclusion that the district court erred in concluding that plaintiffs had demonstrated the requisite probability of success on this issue. *See Mullis v. Arco Petroleum Corp.,* 502 F.2d 290, 294 (7th Cir. 1974); *American Oil Co. v. McMullin,* 508 F.2d 1345, 1353 (10th Cir. 1975); *Reines Distributors, Inc. v. Admiral Corp.,* 256 F.Supp. 581 (S.D.N.Y.1966). In view of the fact that paragraph (d) goes beyond a restoration of the *status quo* and imposes new obligations on Cheker not required by its previous contractual relationship with the plaintiffs and our conclusion on the likelihood of success

under the Robinson-Patman Act, we are compelled to hold that the district court abused its discretion and acted improvidently in its inclusion of paragraph (d) in the preliminary injunction.

### THE CONTEMPT ORDER

The contempt proceedings were instituted after plaintiffs began withholding one cent per gallon from the invoice price of gasoline delivered by Cheker and Cheker responded by terminating deliveries to the plaintiffs. Though there was no evidence produced at the contempt hearing that plaintiffs were suffering damages remotely approaching $10,000 per day, the district court assessed a contempt fine of this amount and directed that it be paid to the plaintiffs.

■ The plaintiffs argue that a civil contempt order is not appealable. It is true that a judgment of civil contempt is not a final decree and therefore is not appealable in itself. *Fox v. Capital Co.,* 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936). However, where the validity of the underlying order or injunction is questioned on appeal there may also be an appeal of a remedial civil contempt order. The order granting the preliminary injunction in this case was appealable as of right under 28 U.S.C. § 1292(a)(1). Though this court required an appealable final decision under 28 U.S.C. § 1291 as a prerequisite to appealability of a civil contempt order in *Peabody Coal Co. v. Local Union Nos. 1734, 1508 and 1548, U.M.W.,* 484 F.2d 78 (6th Cir. 1973), that case is distinguishable from the present one. In *Peabody* the validity of the underlying order upon which the contempt order was based was not challenged. Actually, the parties stipulated that it had been "providently granted." 484 F.2d at 80. In addition, the contempt fine in *Peabody* was payable to the court to coerce compliance rather than to the opposing party as compensation. Under these circumstances it was proper to require that a final judgment be entered before the contempt order could be appealed.

■ The situation in the present case is quite different. The defendant Cheker has insisted that the preliminary injunction was improvidently granted, and we have concluded that this view is correct with respect to that portion of the injunction which is the basis of the contempt order. Furthermore, Cheker was ordered to pay an amount far in excess of any proven damages—not into court, but to the plaintiff—and no bond was required. In *United States v. United Mine Workers*, 330 U.S. 258, 294–95, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Supreme Court referred to such a situation as follows:

> It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued, *Worden v. Searls, supra*, 121 U.S. at pages 25, 26, 7 S.Ct. at page 820, 30 L.Ed. 853; *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.* [86 F.2d 727 (2 Cir. 1936)]; *S. Anargyros v. Anargyros & Co.* [191 F. 208 (C.C.1911)]; and *a fortiori* when the injunction or restraining order was beyond the jurisdiction of the court. (footnote omitted).

Since "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued, . . ." *id.*, logic dictates that the appellate court which rules on the validity of the injunction should deal with the contempt issue. *See United States Steel Corp. v. United Mine Workers*, 519 F.2d 1236 (5th Cir. 1975), where the court of appeals entertained an appeal from a civil contempt order along with an appeal from an amended preliminary injunction and reversed both orders. *Compare Winner Corporation v. Caesar & Co.*, 511 F.2d 1010 (6th Cir. 1976).

In *Inland Steel Co. v. Local No. 1545, United Mine Workers*, 505 F.2d 293 (7th Cir. 1974), the court noted the difference between a coercive civil contempt order and one designed to compensate the party injured by the alleged contumacious activity. The court concluded that a coercive civil contempt order is similar to a criminal contempt order, but that the remedial contempt order under consideration stood "on a different footing," and quoted from *United States v. United Mine Workers, supra.* This distinction was also made in *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727 (2d Cir. 1936), where the court stated:

> A conviction for criminal contempt may indeed survive the reversal of the decree disobeyed; the punishment is to vindicate the court's authority which has been equally flouted whether or not the command was right. But the same cannot be true of civil contempts, which are only remedial. It is true that the reversal of the decree does not retroactively obliterate the past existence of the violation; yet on the other hand it does more than destroy the future sanction of the decree. It adjudges that it never should have passed; that the right which it affected to create was no right at all. To let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong which the law should not do. (citations omitted).

The court concludes that it has jurisdiction to review the remedial contempt order which arose out of an appealable preliminary injunction and that it falls with paragraph (d) of the injunction.

The preliminary injunction is affirmed with respect to paragraphs (a), (b) and (c) thereof and reversed with respect to paragraph (d), which is vacated. The contempt order of September 15, 1976 is reversed and vacated in its entirety. All sums withheld by plaintiffs pursuant to paragraph (d) or the contempt order will be paid promptly to Cheker. Any fines paid by Cheker pursuant to the contempt order will be refunded by the plaintiffs immediately. This action is remanded to the district court for further proceedings consistent with this opinion. The parties will bear their respective costs on this appeal.

## EXHIBIT 1

### PRELIMINARY INJUNCTION

(Filed August 17, 1976)

Pursuant to the decision of this court,

IT IS ORDERED, ADJUDGED AND DECREED that a preliminary injunction be and the same is hereby granted.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a preliminary injunction, to take effect within ten (10) days of the issuance of this order, is hereby issued against Defendant, Cheker Oil Co., its divisions, related companies, directors, officers, agents, servants, employees, successors, and assigns, and all those in active concert or participation with them, herein called Defendant, as follows:

Defendant is enjoined from:

(a) Discontinuing the supply of gasoline to these plaintiffs, Gary Blaylock, operating a station at Route 1 and U.S. 31, Berrien Springs, Michigan; Donald Crago, operating a station on Red Arrow Highway in Stevensville, Michigan; and Steven Linn, operating a station at 1242 M–139, Benton Harbor, Michigan; based on plaintiff's refusal to pay past due or presently accruing minimum rent or to maintain their security deposits at $1,000, or because any of the plaintiffs have previously deducted money from general merchandise monies for minimum rent which they claim was wrongfully charged. The Defendant is not to make further charges or deductions for such minimum rent pending the final resolution of this lawsuit. The plaintiffs, of course, are to continue to pay the 2 cents per gallon rent as they have done since May 1972, and plaintiffs must make remittances therefor pursuant to the customary arrangements.

(b) From charging these plaintiffs minimum rent where charged as a means to obtain higher prices for gasoline to the Defendant lessor-supplier than otherwise allowed under the Energy Allocation Act in violation of 10 C.F.R. § 210.62(c) (1976); or from discontinuing the supply of gasoline to these plaintiffs because they have in the past refused to pay minimum rent allegedly in violation of the Act.

(c) From charging these plaintiffs minimum rent where such charge of minimum rent is a change in normal business practices in violation of 10 C.F.R. § 210.62(a) (1976); or from discontinuing the supply of gasoline to these plaintiffs because they have in the past refused to pay minimum rent allegedly in violation of the Act.

(d) From further discrimination in price and price supports between these plaintiffs and Defendant's five company-operated stations, located in Hartford, South Haven, Dowagiac, Cassopolis, and Benton Harbor (Territorial Road), all in Michigan, in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a) (Supp.1976). This court will view as price discrimination a tankwagon price (not including rent of 2 cents per gallon) to these plaintiffs in excess of 4 cents below the retail price per gallon at which Checker sells its respective grades of gasoline at its five above-named company-operated stations, as determined from an average of the prices charged at a given time at these five stations. This court will also view as price discrimination the failure of Cheker Oil Co. to give these plaintiffs temporary price supports as were previously given these dealers and as are given Cheker's company-operated stations to meet their immediate competition. Defendant is in all manner and ways to deal with plaintiffs' stations the same as its company-operated stations.

No bond will be required.

Dated: August 17th, 1976.

/s/ NOEL P. FOX
Chief District Judge

## EXHIBIT 2

### ORDER

(Filed September 15, 1976)

Based upon the findings of fact in the attached opinion, Cheker Oil Co. is hereby found in contempt of the injunction issued by this court in this matter on August 17, 1976, effective August 27, 1976.

(1) Cheker Oil Co. is to collect no rent for gasoline from plaintiffs during the period that they are without a supply of gasoline.

(2) Pending a final determination of damages upon a hearing before this court, plaintiffs may treat one-half of the amount they have withheld from daily remittances as their damages and use this amount for day-to-day expenses. The remaining one-half of withheld money is to be deposited in an interest-bearing account, pending such determination. Withdrawal from this account shall only be upon the counter-signatures of each plaintiff and their attorney.

(3) Plaintiffs are hereby awarded $750 in attorney fees and costs.

(4) Until such time as Cheker Oil Co. purges itself of its contempt by resuming gasoline deliveries to plaintiffs, it will pay a fine to plaintiffs of $10,000 per day, effective immediately upon the termination of the hearing on Friday, September 10, 1976.

IT IS SO ORDERED.

Effective date—September 10, 1976.[1]

Dated: September 15th, 1976.
/s/ NOEL P. FOX
Chief District Judge

1. There was an oral opinion from the bench on Friday, September 10, 1976. This written order was not signed until today because I have been in Madison, Wisconsin and Marquette, Michigan since the date of the hearing. The attorneys for both parties were notified of this circumstance.