842 P.2d 683

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, ex rel., Deborah L. OSBORN, Plaintiff–Appellant,**

v.

**Gene ALTMAN, Defendant–Respondent.**

No. 19460.

Supreme Court of Idaho, Coeur d'Alene, October 1992 Term.

Nov. 23, 1992.

Larry EchoHawk, Atty. Gen., John J. McMahon (argued), Chief Deputy, Boise, for plaintiff-appellant.

Stephen B. McCrea, Coeur d'Alene, for defendant-respondent.

JOHNSON, Justice.

This is a paternity case.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Deborah Osborn alleged that Gene Altman was the father of her child. Osborn received aid for dependent children from the state on behalf of her child. Altman allowed a blood sample to be taken and submitted to a human leukocyte antigen (HLA) test in order to determine paternity. Based on the test results, the state department of health and welfare (the department) brought this action on behalf of Osborn seeking: (1) an order establishing that Altman was the natural father of Osborn's child, (2) an award of child support, and (3) reimbursement of public assistance paid by the state for the child.

Before trial, Altman submitted a proposal to the department in which he agreed to drop his claim for visitation if the department agreed to drop its claim for unpaid child support. The department concluded that the proposal caused a conflict of interest between the department and Osborn and that Osborn should consider retaining her own attorney to deal with the visitation and custody issues.

On the day before the scheduled trial, the department and Altman filed a stipulation for postponement of trial, based on the potential conflict of interest between Osborn and the attorney for the department. The trial court denied a postponement.

During the trial, the department called a department employee as a witness. This witness testified that she was a custodian of Osborn's public assistance records, that

she had been present when blood samples were drawn from the parties, and that she had shipped the samples to the HLA testing facility. When the department moved for admission of the paternity evaluation report, Altman objected on the grounds that the report was hearsay and that the report had not been authenticated. The trial court denied admission of the HLA report because: (1) the report had been done by a doctor not appointed by the trial court, (2) the report was inadmissible hearsay unless the department asserted an appropriate hearsay exception, and (3) the Idaho Rules of Evidence take precedence over statutes that purport to govern the admissibility of evidence.

The trial court also questioned the qualifications of the doctor who evaluated the blood samples because the doctor did not testify at trial. In response, the department offered in evidence the curriculum vitae of the doctor. The trial court sustained Altman's objection that the curriculum vitae was hearsay.

After the department had presented its case, Altman moved for involuntary dismissal pursuant to I.R.C.P. 41(b). The trial court reserved its ruling until Altman presented his case. After Altman rested his case, the trial court ruled that the department had not sustained its burden of proof and granted Altman's motion to dismiss. Later, the trial court awarded costs and attorney fees to Altman.

The department appealed to the district judge, who affirmed the trial court's decision. The department then appealed to this Court.

## II.

### I.C. § 7–1116 DOES NOT APPLY TO THE ADMISSION OF REPORTS OF BLOOD TESTS CONCERNING PATERNITY UNLESS THE TRIAL COURT APPOINTS THE QUALIFIED EXPERT WHO PERFORMS THE TESTS.

■ The department asserts that I.C. § 7–1116 applied to the admissibility of the blood test report in this case, even though the tests were not performed by a court-appointed expert. We disagree.

I.C. § 7–1115(3) states that evidence relating to paternity may include, but is not limited to, evidence listed in the statute, including blood test results under I.C. § 7–1116. I.C. § 7–1116(1) states that a court may require the mother, the child, and the alleged father to submit to blood tests. The tests shall be performed by a court-appointed and qualified expert, with verified documentation establishing the chain of custody. A verified experts' report of the blood tests "shall be admitted at trial unless a challenge to the testing procedures or the blood analysis has been made twenty (20) days before trial." I.C. § 7–1116(1).

The statute is self-explanatory; the statute applies only if the trial court appoints the expert. Therefore, the trial court was correct in ruling that I.C. § 7–1116 does not apply to the blood test report in this case.

*Crain v. Crain,* 104 Idaho 666, 662 P.2d 538 (1983), does not change our conclusion. In *Crain,* the Court held that "if the results of HLA tests are properly offered, such are admissible in evidence and should be considered, along with all other evidence on the issue of paternity." *Id.* at 673, 662 P.2d at 545. To the extent that I.C. § 7–1116 contains a means of properly offering the results of HLA tests, that means is inapplicable in this case.

■ Because we have concluded that I.C. § 7–1116 is not applicable in this case, we decline the opportunity to rule on the effect of any conflict between the Idaho Rules of Evidence and the provisions of I.C. § 7–1116. We do note, however, that to the extent of any conflict, the provisions of I.C. § 7–1116 are of no force or effect. I.R.E. 1102; *State v. Zimmerman,* 121 Idaho 971, 974, 829 P.2d 861, 864 (1992).

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN NOT ADMITTING THE HLA REPORT UNDER THE HEARSAY EXCEPTIONS CONTAINED IN I.R.E. 803(6) OR (24).

The department asserts that the HLA report was admissible under the "business

records" hearsay exception contained in I.R.E. 803(6) and the "other exceptions" provision of I.R.E. 803(24). We conclude that the trial court did not abuse its discretion in not admitting the HLA report under either of these exceptions.

A blood test report ordered to prove paternity is hearsay. *Isaacson v. Obendorf,* 99 Idaho 304, 309, 581 P.2d 350, 355 (1978). The trial court has broad discretion whether to admit hearsay under one of the exceptions, and we will not overturn the exercise of that discretion absent the clear showing of abuse. *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 900, 665 P.2d 661, 664 (1983).

Before considering whether trial court abused its discretion in refusing to admit the HLA report, we first note that at trial the department did not invoke either of the exceptions upon which it now relies. Ordinarily, we would not address these issues for the first time on appeal. In ruling on Altman's hearsay objection to the admission of the HLA report, however, the trial court stated that it could not find in the rules of evidence an exception that would allow the admission of the report, but invited the department's attorney to refer the court to one. The department's attorney did not raise the business records exception or the "other exceptions" provision of I.R.E. 803(6) and (24). Although the department did not preserve the question of the applicability of these exceptions by invoking them at trial, we address these questions, because the trial court explicitly rejected the applicability of any exception to the hearsay rule. *State v. Griffin,* 122 Idaho 733, 838 P.2d 862 (1992).

I.R.E. 803(6), the so-called "business records" exception provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Although from reading this exception we discern several reasons that would support the trial court's exercise of discretion in not admitting the HLA report, the first reason is sufficient. The department's witness testified that she was the custodian of records reflecting the amount in grants paid to by the department. She did not testify that she was the custodian of the HLA report. The department argues that even if the witness was not the custodian of the HLA report, she was a "qualified witness." We do not find this argument persuasive.

The meaning of the term "qualified witness" as used in I.R.E. 803(6) is illuminated by our Court of Appeals in *Christensen v. Rice,* 114 Idaho 929, 763 P.2d 302 (Ct.App. 1988). In *Christensen,* in discussing I.R.E. 803(6), the Court of Appeals said:

Records need not be authenticated by the person who actually made them; all that is necessary is that the record be authenticated by a person who has custody of the record as a regular part of his or her work, *or has supervision of its creation. Id.* at 933, 763 P.2d at 306 (emphasis added).

While this interpretation of "qualified witness" by our Court of Appeals is not binding on this Court, we accept it because it is meaningful within the context of I.R.E. 803(6). The term "qualified witness," in the context of its use in I.R.E. 803(6), first appeared in the Uniform Business Records as Evidence Act, which was enacted in Idaho in 1939. "Unif. Business Records as

Evidence Act," § 2, 9A U.L.A. 506 (1965); 1939 Idaho Sess.Laws, ch. 106, § 2, p. 175.

One of the cases relied on by our Court of Appeals in *Christensen* spells out the basis for the interpretation we accept:

> The uniform act was passed by the Legislature for the purpose (among others) of making evidence that would otherwise be hearsay competent evidence. Where (as here) the trial court is satisfied that sufficient testimony has been adduced regarding the manner in which certain records have been kept and that their identity has been properly established in compliance with the act, no objection on the ground of hearsay can be entertained. As applied to hospital records, compliance with the act obviates the necessity, expense, inconvenience and sometimes impossibility of calling as witnesses the attendants, nurses, physicians, X-ray technicians, laboratory and other hospital employees who collaborated to make the hospital record of the patient. It is not necessary to examine the person who actually created the record so long as it is produced by one who has the custody of the record as a regular part of [the person's] work *or has supervision of its creation.*

*Cantrill v. American Mail Line,* 42 Wash.2d 590 257 P.2d 179, 189 (Wash.1953) (citations omitted) (emphasis added).

The department's witness was not a "qualified witness." The witness did not supervise the creation of the HLA report. Therefore, the trial court did not abuse its discretion in refusing to admit the HLA report under I.R.E. 803(6).

In *State v. Hester,* 114 Idaho 688, 760 P.2d 27 (1988), the Court spelled out the requirements for admission under the "other exceptions" provisions of I.R.E. 803(24):

> To be admissible under I.R.E. 803(24), the court must determine that (A) the statement has circumstantial guarantees of trustworthiness equivalent to those in Rules 803(1) to 803(23), (B) the statement is offered as evidence of a material fact, (C) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (D) the general purposes of the rules of evidence, and the interests of justice, will best be served by admission of the statement into evidence. Further, (E) a statement may not be admitted under I.R.E. 803(24) unless its proponent gives the adverse party adequate notice and information regarding use of the statement.

*Id.* at 697, 760 P.2d at 36.

Again, as in the case of I.R.E. 803(6), although we can discern several reasons under the requirements of this exception that would support the trial court's exercise of discretion in not admitting the HLA report, the first reason is sufficient. Except for the department's claim in its complaint that Altman had a duty to repay the department $207 for costs incurred in the drawing, shipping and analysis of the blood samples and the allegation that a true and correct copy of the analysis result were attached to the complaint, there is no basis to support a finding that the department gave Altman adequate information and notice regarding the use of the HLA report. Therefore, the trial court did not abuse its discretion in not admitting the HLA report under I.R.E. 803(24).

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN NOT ADMITTING THE CURRICULUM VITAE OF THE DOCTOR WHO MADE THE HLA REPORT.

The department asserts that the trial court should have admitted the curriculum vitae of the doctor who made the HLA report. We conclude that the trial court did not abuse its discretion in not admitting the curriculum vitae.

The department argues that the doctor's curriculum vitae was admissible under I.C. § 7-1116 and under the business records exception to the hearsay rule contained in I.R.E. 803(6). We have disposed of each of these arguments above in ruling on the admissibility of the HLA report. The cur-

riculum vitae has no better standing for admission than the report.

## V.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED THE PARTIES' STIPULATION TO POSTPONE THE TRIAL.

The department asserts that the trial court should have postponed the trial in response to the stipulation of the parties. We conclude that the trial court did not abuse its discretion in denying the postponement.

The stipulation presented to the trial court indicated a "potential conflict of interest" between Osborn and the attorney representing the department "concerning the issues of visitation and reimbursement of public assistance." The attorney for the department contended that the possible conflict arose because three weeks before the trial, Altman made a proposal to drop his demands for visitation in return for the department dropping its claim for unpaid child support.

■■■ A motion for continuance is addressed to the sound discretion of the trial court. *Seamons v. Spackman*, 81 Idaho 361, 364, 341 P.2d 442, 445 (1959). A stipulation for postponement of a trial is nothing more than a joint motion for continuance. Applying the analysis for determining whether a trial court has abused its discretion as stated in *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991), we conclude that the trial court did not abuse its discretion when it refused to postpone the trial.

## VI.

## THE TRIAL COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS AND SUPPORT THE TRIAL COURT'S CONCLUSION THAT THE DEPARTMENT FAILED TO PROVE ALTMAN'S PATERNITY.

The department asserts that the trial court should not have dismissed the case, but should have found that the department met its burden of proof in establishing paternity. We disagree.

I.R.C.P. 41(b) states that if the trial court grants a defendant's motion for involuntary dismissal on the merits, the trial court shall make findings pursuant to I.R.C.P. 52(a), which states that findings of fact shall not be set aside unless clearly erroneous. In this case, the trial court made findings of fact and concluded that the department had not presented sufficient evidence to carry its burden of proof on the question of Altman's paternity.

■■ Under I.R.C.P. 52(a), we may not set aside the trial court's findings of fact unless they are clearly erroneous, that is, unless they are not supported by substantial, competent evidence. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). There is substantial, competent evidence in the record to support the trial court's findings, and the findings support the trial court's conclusion.

## VII.

## AWARD OF ATTORNEY FEES ON APPEAL.

Altman requests attorney fees on appeal, which we grant pursuant to I.C. § 12–120(1).

■■ Although the trial court did not specify the basis for its award of attorney fees to Altman, it appears certain to us that the trial court made its award pursuant to I.C. § 12–120(1). By its complaint, the department sought not only to have the trial court determine Altman's paternity, but also to award the department $2,027.75 in support paid by the department for the child and $207 for the drawing, shipping, and analysis of the blood samples. This brought the action within the provisions of I.C. § 12–120(1), because the amount pleaded was $25,000 or less. As the prevailing party, Altman was entitled to an award of attorney fees by the trial court. The Court has awarded attorney fees on appeal when the party seeking the fees was awarded attorney fees by the trial court pursuant to I.C. § 12–120(1). *Robinson v. Joint Sch.*

*Dist. No. 331,* 105 Idaho 487, 491, 670 P.2d 894, 898 (1983).

## VIII.

## CONCLUSION

We affirm the trial court's dismissal of the department's claims.

We award costs and attorney fees on appeal to Altman.

BAKES, C.J., and BISTLINE, McDEVITT and TROUT, JJ., concur.