888 P.2d 804

**Dennis K. CONLEY, Plaintiff–Counterdefendant–Appellant,**

v.

**Craig D. WHITTLESEY, a single person; Gary Bishop and Norma Bishop, husband and wife, Defendants–Counterclaimants–Respondents,**

and

**Richard Ward and Kelly Ward, husband and wife, Defendants–Respondents.**

No. 19993.

Court of Appeals of Idaho.

Jan. 24, 1995.

Dennis K. Conley, pro se.

Landeck, Westberg, Judge & Graham, P.A., Moscow, for respondents Whittlesey and Bishop. Charles L. Graham argued.

PERRY, Judge.

The subject of this litigation is an easement which was conveyed to Dennis Conley in 1980 by the grantors of his real property

located on Moscow Mountain and described as follows:

A right of way easement for ingress and egress together with the right to construct, reconstruct, repair and maintain an existing road running over and across the North One-half of the Northeast Quarter (N½NE¼) of Section 26, Township 40 North, Range 5 West, Boise Meridian, Latah County, State of Idaho.

At issue are the precise perimeters of the easement, which may have been modified by prescriptive use, over and across separate parcels of land owned by Craig D. Whittlesey, Gary and Norma Bishop, and Richard and Kelly Ward. Also at issue are the scope of the easement, which the parties sought to define by means of a stipulation addressing roadway width and maintenance, and an injunction restraining certain actions of the parties with regard to the roadway during the pendency of this action.

In this appeal, we are asked to determine if the district court's finding that the parties were bound by the terms of a purported settlement articulated on the record at a July 10, 1989, hearing and the district court's order for the parties to execute a writing reflecting that agreement were erroneous. We reverse and remand for Conley to be accorded a trial on the merits of his claim. However, we affirm the district court's finding of contempt and the sanctions imposed for Conley's willful defiance of its order.

## BACKGROUND

A trial in this matter was originally scheduled for July 10, 1989. On that date, however, the parties advised the district court that the trial would not proceed as scheduled. The parties then set forth on the record the settlement terms they believed they had agreed upon, including: the width of the easement; no moratorium on Conley's development of his property using the easement; and the respective parties' responsibilities to make and pay for repairs and maintenance of the easement in accordance with an engineering firm's specifications. The parties stated that these terms would establish a status quo to govern for a period of seven years, after which time the parties would

again be free to litigate the scope of the easement as conveyed and any increased burden caused by Conley's use of the easement in developing his property.

As a result, the district court vacated the trial. The district court then indicated that if a written agreement memorializing the proposed settlement was not executed within a reasonable time, the court would set a new trial date, which would be, at the earliest, nine months hence.

The parties exchanged proposed drafts of settlement agreements, but neither party's draft was acceptable to the other and, therefore, neither was executed. In October 1989, the district court sua sponte issued an order directing the parties to show cause why the court should not order the parties to execute a written agreement in conformity with the settlement terms expressed at the July 10, 1989, proceeding or, in the alternative, dismiss the action. At the show cause hearing held November 8, 1989, the district court inquired as to which points precluded the parties' execution of the agreement they had purportedly reached in July. Counsel for Whittlesey and Bishop advised the district court that his proposed draft went beyond the scope of the pleadings and included more detail than the terms discussed on the record at the July hearing. Counsel for Conley submitted that the record of the July 10, 1989, hearing did not reflect that the parties "ever said that the 'agreement' was final."

At the November hearing, the district court acknowledged having stated at the July 10, 1989, hearing that, if a settlement agreement was not executed, the court would reset the matter for trial, but indicated that it might order the parties to execute an agreement. Concluding that the parties had entered into a binding stipulation in July 1989, the district court ordered the parties to prepare a written agreement to conform with what had been placed on the record. The district court further stated that it would order the parties to execute a written agreement which conformed to what had been entered on the record or, in the alternative, "take this to trial."

On August 16, 1991, the district court sua sponte issued an order declaring the status of the settlement between the parties to the easement litigation. The district court recited in the order that it had advised the parties during a hearing conducted on October 1, 1990, in a companion case (Whittlesey v. Conley, Latah County Case No. C–2828) that "it was ordering that the parties comply with the terms and conditions of the settlement orally articulated in the instant action." The district court went on to explain that "it was hoped by this Court that so advising the parties of its decision, that the parties would proceed with the steps necessary to carry into effect such settlement. Such expectation or hope of the Court was unfulfilled."

As part of the August 16, 1991, order, the district court concluded that, with the modifications mentioned therein, a "Roadway Easement Litigation Settlement Agreement–Revised" drafted by counsel for Whittlesey and Bishop, appropriately memorialized in writing the orally articulated settlement made upon the record in open court. The district court then ordered the parties to prepare a final redraft of the agreement within ten days, with the addition of a specific time frame for completion of various phases of the road's repair and restoration. To insure that the parties would promptly sign the agreement, the district court included the following paragraphs:

(3) Each of the parties shall sign the redraft within five days of receipt of the same and return the same immediately upon execution to Mr. Landeck, who is directed to file the same with the clerk of the above entitled Court when signed by all parties;

(4) In the event a party fails or refuses to execute the redraft the Court will appoint a commissioner to execute the redraft on behalf of such party with the same force and effect as if the recalcitrant party had executed the same, and such party will be deemed to be in contempt for failure to obey the dictate of paragraph (3) hereinabove.

Conley attempted to appeal from this order, which he claimed the district court had no authority to make. The district court,

however, held that the August 16, 1991, order was not a final, appealable order and denied a Rule 54(b) certificate.

When Conley refused to execute the redraft agreement, Whittlesey and Bishop moved the district court to hold Conley in contempt. Pursuant to I.C. § 7–610, and upon Conley's admission that he had not complied with the August 16, 1991, order, the district court found Conley in contempt by order dated April 23, 1992. On May 13, 1992, the district court entered an order directing the clerk of the court to execute the agreement on behalf of Conley. On June 1, 1992, sanctions were imposed against Conley based upon the district court's previous finding of contempt. Conley filed a notice of appeal in which he sought review of this contempt order as well as the August 16, 1991, order holding that an enforceable agreement between the parties had been formed on July 10, 1989, and requiring execution of the redraft agreement.

Conley asserts on appeal that it was error for the district court sua sponte to enter an order holding that the parties had reached a settlement on July 10, 1989. Conley maintains that, until a formal, executed writing was accomplished, there was no agreement settling any part of the litigation on the easement. Conley also claims that the oral stipulation was invalid because it violated the statute of frauds. In the absence of such a signed agreement, Conley argues that he is entitled to have the matter reset for trial. As his second issue on appeal, he contends that the 1992 contempt order is invalid because the decree ordering him to execute the redraft agreement was also made by the court sua sponte and without proper authority.

## STANDARD OF REVIEW

 Oral stipulations of the parties in the presence of the court are generally held to be binding, especially when acted upon or entered on the court records, and need not be signed by the parties or their attorneys. 73 AM.JUR.2d *Stipulations* § 3, at page 537 (1974). The validity of a stipulation or agreement between counsel regarding matters be-

fore the court is predicated upon both parties' agreement to its terms. *First Security Bank of Idaho v. Neibaur*, 98 Idaho 598, 605, 570 P.2d 276, 283 (1977). An attempted stipulation is ineffective when it is clear from the record that the parties never assented to it. *Id.* See also 73 AM.JUR.2d *Stipulations* § 3, at 536 (1974).

■ Whether the parties to an oral agreement or stipulation become bound prior to the drafting and execution of a contemplated formal writing is largely a question of intent. 17A AM.JUR.2d *Contracts* § 37, at 66 (1974). The intent of the parties is to be determined by the surrounding facts and circumstances of each particular case. *Id.* at § 39, at 70. *See also Elliott v. Pope*, 42 Idaho 505, 247 P. 796 (1926). In the ascertainment of the intention of the parties, the question also arises whether any inference is to be drawn from the reference by the parties to a future contract in writing. 17A AM.JUR.2d *Contracts* § 39, at 70 (1974). The stipulations are best evaluated by looking to the very words of counsel and their clients. *First Security Bank of Idaho v. Hansen*, 107 Idaho 472, 690 P.2d 927 (1984). With these principles in mind, we examine the transcript of the July 10, 1989, hearing to determine whether there is substantial evidence to support the district court's finding that the parties intended the settlement terms which were recited on the record to be their final agreement. We will defer to the district court's findings unless they are not supported by the evidence. I.R.C.P. 52(a); *Dep't of Health & Welfare ex rel. Osborn v. Altman*, 122 Idaho 1004, 842 P.2d 683 (1992); *Tri–Circle, Inc. v. Brugger Corp.*, 121 Idaho 950, 829 P.2d 540 (Ct.App.1992).

## DISCUSSION

### I.

On the day set for trial, counsel for Conley opened his remarks by advising the district court that the parties had "discussed at length the possibility of reaching an amicable settlement" and further stated, "We would like to put on the record ... our agreement in principle." The specific terms related to the reconstruction of the roadway, in accor-

dance with the engineers' specifications, to satisfy the needs of the parties. In addition, the parties agreed that the ultimate issues, regarding the scope of the easement and the increased burden placed on the easement as a result of the development of Conley's property, remained in dispute. The parties agreed, however, that further litigation on these issues would be deferred for a period of seven years, and Conley's counsel further stated that once the agreement was finalized, it would include a seven-year moratorium on litigation. Finally, counsel indicated that "once that agreement is in place and agreed upon, signed by all parties, we will ask the Court to dismiss the action that is now pending."

■ Stipulations for the settlement of litigation are regarded with favor by the courts and will be enforced unless good cause to the contrary is shown. *Kershaw v. Pierce Cattle Co.*, 87 Idaho 323, 328, 393 P.2d 31, 34 (1964), *citing* 83 C.J.S. *Stipulations* §§ 2, 31 (1953). An "agreement in principle," however, has been held not to irrevocably commit the parties to the oral settlement of their case where a letter confirming settlement was to be "a memorandum of our intentions which shall be set forth in a formal contract drawn by our attorney." *Daly v. Becker*, 109 A.D.2d 651, 486 N.Y.S.2d 239, 240 (1st Dep't, 1985). Similarly, in *United States v. Newport News Shipbuilding & Dry Dock Co.*, 571 F.2d 1283, 1286 (4th Cir.1978), *cert. denied* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978), the negotiators for the government and the shipyard reached what they considered to be an oral "agreement in principle" of the government's suit for specific performance of the contract by the shipbuilder. On appeal, the court found that the evidence established that the Navy's acceptance of the agreement was conditional and subject to final approval, holding that the Attorney General was not estopped from disapproving the settlement. *Id.* at 1287–88. *See also South Fork Coalition v. Board of Com'rs*, 112 Idaho 89, 90, 730 P.2d 1009, 1010 (1986) ("The Board of County Commissioners has not rendered any final decision on the application, and all administrative remedies have not been exhausted. The board has only

'*approved in principle* the proposed planned unit development ...'") (emphasis added).

Focusing on counsel's statements made on the record at the July 10, 1989, hearing, we conclude that the parties contemplated the preparation and execution of a formal agreement. It is also clear that the district court anticipated the settlement to be finally accomplished by means of a formal writing:

> COURT: The trial scheduled to commence this date is vacated, to be reset upon further order of the court in the event that the appropriate settlement documents and stipulation for dismissal are not filed within a reasonable time.
>
> . . . .
>
> COURT: So please understand that if the settlement falls through and I have to reset this for trial, it will be some time next year, probably into the late spring or early summer.
>
> . . . .
>
> COURT: I have vacated it in light of the representations that apparently it has been settled. And we're looking at nine months to a year before I could reset this ... if the settlement agreement is ... not executed by the parties.

Therefore, the anticipated writing was viewed as the consummation of the parties' negotiations and was required for a full expression of the parties' covenants and promises. *See Elliott v. Pope,* 42 Idaho 505, 511, 247 P. 796, 797 (1926). We conclude that the record does not support the district court's finding of an enforceable agreement upon the pronouncements made in court on July 10, 1989.

Our conclusion is further buttressed by the fact that neither party sought to enforce the agreement until after the district court's August 16, 1991, order declaring the status of the settlement between the parties. Prior to the court's order, counsel for Whittlesey and Bishop had not requested any relief which would indicate that the parties themselves believed that an agreement had been reached. There is no evidence in the record that suggests Whittlesey and Bishop had attempted to either enforce the stipulation as a binding agreement or amend their pleadings

to plead an additional cause of action seeking enforcement. As previously noted, both the order to show cause and the August 16, 1991, order were the result of actions initiated by the district court sua sponte, thereby calling into question the district court's authority to reiterate the terms of the settlement and to order execution of the redraft agreement. We find it unnecessary to remand the matter due to these procedural irregularities, however, based on our decision on the merits of the issue.

We hold that the district court erred in ruling that the parties' agreement in principle was final and conclusive and requiring the parties to execute the redraft agreement. Having so held, we reverse the August 16, 1991, order of the district court determining that the settlement agreement was binding as of July 10, 1989. Thus, we need not reach Conley's claim that the oral agreement was invalid because it violated the statute of frauds.

## II.

■ Conley next asserts that the district court erred in issuing the order of contempt. Conley argues that the finding of contempt predicated upon the erroneous order of August 16, 1991, falls with the order. In other words, states Conley, disobedience of an erroneous decree—the order fixing the agreement as of July 10, 1989, and requiring Conley's signature on the redraft memorializing that agreement—does not constitute contempt of court.

After entering its order holding that the agreement had been made on July 10, 1989, and directing the parties to execute the same within a specified time, the district court conducted a hearing on Whittlesey's motion for contempt. At the hearing, Conley admitted that he had not signed the redraft agreement. The district court, on April 23, 1992, adjudged Conley in contempt for his failure to execute the agreement as ordered by the court on August 16, 1991. The district court further provided that Conley could purge himself of the contempt by appearing at the office of the clerk of the court before May 5, 1992, to execute the original redraft agreement. Conley never did execute the agree-

ment. Whittlesey and Bishop sought relief from the district court, which on June 1, 1992, imposed a $500 fine upon Conley pursuant to I.C. § 7–610[1] as a penalty for the contempt. At that time, the district court also appointed the clerk of the court to execute the redraft agreement in Conley's stead.

A district court has the power to adjudge in contempt any person who willfully disobeys a specific and definite order of the court. *Gifford v. Heckler,* 741 F.2d 263, 265 (9th Cir.1984), *citing Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146 (9th Cir.1983). Where the primary purpose of the penalty is to coerce compliance with an order of the court, the contempt is civil in nature. *In re Contempt of Reeves,* 112 Idaho 574, 576–77, n. 1, 733 P.2d 795, 797–98, n. 1 (Ct.App.1987). *See also General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986). Where the objective is to punish for the acts of contempt, the contempt sanction is criminal. *Marks v. Vehlow,* 105 Idaho 560, 566–67, n. 6, 671 P.2d 473, 479–80 n. 6 (1983).

There is ample authority that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. *United States v. United Mine Workers,* 330 U.S. 258, 293, 67 S.Ct. 677, 695–96, 91 L.Ed. 884 (1947). *See also Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 590–91, 42 L.Ed.2d 574 (1975), *quoted in In re Contempt of Reeves,* 112 Idaho at 579, 733 P.2d at 800. "The fact that a witness may disagree with the court ... is no excuse for disobeying an order of the court ..., the proper remedy for challenging the correctness of an adverse ruling being by appeal by an adversely affected party, not by disobedience by the witness." *Barnett v. Reed,* 93 Idaho 319, 322, 460 P.2d 744, 747 (1969). If a party were free to disobey any order with which he or she disagreed, the entire judicial process

would break down. *In re Contempt of Reeves,* 112 Idaho at 579, 733 P.2d at 800.

In a case where a contempt order was before the Idaho Supreme Court on a writ of review under I.C. § 7–202, the Court stated:

> Even though the judgment in the case which formed the basis of this contempt proceeding has been reversed, it is our conclusion that such reversal will be of no avail to the petitioner here in the determination of whether the contempt judgment should be upheld. The judgment in the principal cause was not a void judgment for the trial court had jurisdiction of the parties, the subject matter, and the power to enter the judgment it did and the error upon which the reversal is based is not jurisdictional. It is almost unanimously agreed that a person may not disregard or violate such an order, and set up the error as a defense in a contempt proceeding for violation of such order. 12 A.L.R.2d 1059, at page 1107, § 41.

*Mathison v. Felton,* 90 Idaho 87, 94, 408 P.2d 457, 461 (1965).

Although a party may be punished for criminal contempt for failing to obey an order that is later reversed on appeal, the same may not be true for a civil contempt order that is remedial in nature. In *United Mine Workers,* 330 U.S. at 295, 67 S.Ct. at 696–97, the Supreme Court noted that although punishment by criminal contempt will be upheld even if the order that was disobeyed by the contemnor is subsequently set aside, it does not follow that the other party "may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued...." *See also American Greetings Corp. v. Dan-Dee Imports, Inc.,* 807 F.2d 1136, 1148–49 (3d Cir.1986); *United States v. Spectro*

---

1. I.C. § 7–610 states:

 Judgment—Penalty.—Upon the answer and evidence taken, the court or judge must determine whether the person proceeded against is guilty of a [the] contempt charged, and if it be adjudged that he is guilty of the contempt, a fine may be imposed on him not exceeding $500.00, or he may be imprisoned not exceeding five (5) days, or both; except that if the contempt of which the defendant be adjudged guilty be a disobedience of a judgment or order for the support of minor children, he may be imprisoned not exceeding thirty (30) days in addition to such fine, under this section, as the court may impose.

 (Bracketed word "the" inserted by compiler.)

*Foods Corp.*, 544 F.2d 1175, 1182–83 (3d Cir. 1976); *Lewis v. S.S. Baune*, 534 F.2d 1115 (5th Cir.1976); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965–66 (6th Cir.1976); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 910 (3d Cir.1975); *Inland Steel Co. v. Local Union No. 1545, United Mine Workers of America*, 505 F.2d 293, 296–97 (7th Cir. 1974); *Heyman v. Kline*, 456 F.2d 123 (2d Cir.1972).

In Conley's case, the district court did not specify whether the fine imposed upon Conley was in the nature of a criminal penalty for his past act of contempt or a civil punishment whose objective was to coerce his compliance. It appears, however, that the fine was coercive in nature, that is, it was designed to promote obedience to the court's orders, rather than in the nature of compensation for the other party's losses and damages. *See Inland Steel Co. v. Local Union No. 1545, United Mine Workers of America, supra.* A coercive civil contempt order is similar to a criminal contempt order, but the remedial contempt order stands on a different footing. *See United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Inland Steel Co. v. Local No. 1545, United Mine Workers*, 505 F.2d 293 (7th Cir.1974); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962 (6th Cir.1976); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727 (2d Cir.1936). We find the nature of the order—coercive or remedial—to be a practicable distinction in resolving whether to uphold the contempt sanction upon reversal of the underlying decree. The fine imposed upon Conley clearly was not remedial.

Therefore, we adhere to the policy enunciated in *Mathison* guaranteeing orderly judicial process, and we will not reverse the contempt order imposing a fine on Conley. However, we note that the district court stayed the order for payment of the fine pending this appeal. On remand the district court may reconsider its contempt order in view of our reversal of the underlying decision directing Conley to execute the settlement agreement.

## CONCLUSION

We hold that the district court erred in ruling that the settlement terms articulated on the record of the July 10, 1989, hearing constituted the final agreement between the parties and that the writing to follow was intended to be but a memorialization of that agreement. We further hold that the evidence does not support a finding that the parties intended to be bound by the terms put on the record July 10, 1989. We reverse the district court's finding of an enforceable agreement and the order mandating Conley's signature on the redraft agreement. We affirm, however, the district court's finding Conley in contempt for disobedience of its order. We remand the case for further proceedings. Each party shall bear its own costs and attorney fees.

WALTERS, C.J., concurs.

LANSING, Judge, Specially concurring.

I agree with the majority's determination, in Part I of the opinion, that the district court order of August 16, 1991, must be vacated, but I cannot adopt the majority's rationale, which essentially substitutes for the district court's findings of fact made without an adequate opportunity for presentation of evidence, different findings of fact made on appeal. In my view, with the litigation in its present posture, neither court should be addressing the factual issue of whether the parties intended the stipulation of July 10, 1989, to be a final, enforceable agreement.

As the majority opinion points out, until the district court *sua sponte* issued its order directing the parties to show cause why they should not be ordered to execute a written agreement conforming to the stipulation, neither party had taken a position that a settlement agreement had been breached, and neither party had sought to enforce it. Assuming, *arguendo*, that the July 10, 1989, stipulation did constitute a binding settlement contract, it was not the trial court's role to initiate enforcement proceedings. The Idaho Supreme Court has stated:

A rescission or repudiation of an executory compromise agreement by one party

thereto confers a right of election upon the other party. He may accept such rescission and himself rescind the agreement and assert the original claim, or he may reject such rescission and maintain an action for enforcement of the compromise agreement.

*Wilson v. Bogert,* 81 Idaho 535, 543, 347 P.2d 341, 346 (1959). Thus, where a settlement agreement has been breached, the aggrieved party is allowed to choose whether to sue for enforcement of the settlement terms or to pursue that party's original claims or defenses in the underlying action.

If the injured party does seek enforcement of the settlement contract, "such a contract stands on the same footing as any other contract and is governed by the same rules and principles as are applicable to contracts generally." *Id.* at 542, 347 P.2d at 345. Thus, a claim for breach of a settlement agreement is a contract action that would seem to be subject to all the procedural standards that normally attend such claims, including the right to raise defenses, conduct discovery and have factual issues resolved by a trial on the merits.

Here, the Whittleseys and Bishops had not chosen to amend their pleadings to allege a breach of the settlement agreement, nor had they otherwise invoked the aid of the court to enforce the settlement. Instead, in the autumn of 1989 they requested a pretrial conference, apparently intending to go forward with the underlying litigation, but the district court responded with its show cause order. The court thus appropriated the right belonging to the Whittleseys and Bishops to decide whether to proceed with the litigation or to stand on the alleged settlement. In addition, the summary proceedings conducted on the show cause order, from which the district court concluded that a final settlement had been articulated in the stipulation of July 10, 1989, did not comply with the procedural rules governing litigation of civil claims, and it did not afford the parties a trial at which could be adduced all evidence that might bear upon the factual issue as to whether the parties intended the stipulation to be a final agreement. Because of these procedural irregularities, the district court's order of August 16, 1991, should be vacated.

It is neither necessary nor appropriate for this Court to take the further step of addressing the factual question of the parties' intent. The majority opinion compounds the district court's error by looking at the incomplete evidence in the record, substituting its view of the evidence for that of the district court, and holding that no agreement was concluded even though the parties now advocating the agreement, the Whittleseys and Bishops, have had no proper opportunity to present evidence on that issue. This Court should, instead, merely vacate the district court's August 16, 1991, order, and remand for further proceedings. If on remand the Whittleseys and Bishops wish to amend their pleadings to allege breach of a settlement agreement, they should have the opportunity to present and prove that claim, with Mr. Conley having a commensurate opportunity to disprove it.

I concur with Part II of the majority opinion regarding the district court's contempt order.