IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1284

Filed: 19 April 2016

Forsyth County, No. 15 CVS 668

SOUTHEAST CAISSONS, LLC, Plaintiff,

v.

CHOATE CONSTRUCTION COMPANY, CHOATE CONSTRUCTION GROUP, LLC, FALCON ENGINEERING, INC., BBH DESIGN, P.A., and KIMLEY-HORN AND ASSOCIATES, INC., Defendants.

Appeal by defendants from order entered 11 August 2015 by Judge William Z. Wood in Forsyth County Superior Court. Heard in the Court of Appeals 31 March 2016.

*Randolph M. James P.C., by Randolph M. James, for plaintiff-appellee.*

*Johnston, Allison & Hord, P.A., by Robert L. Burchette, Michael J. Hoefling, and David V. Brennan, for Choate Construction Company and Choate Construction Group, LLC, defendants-appellants.*

TYSON, Judge.

Defendants Choate Construction Company and Choate Construction Group, LLC (collectively, "Choate") appeal from order denying Choate's motion to dismiss, or alternatively, for change of venue pursuant to Rule 12(b)(3). We affirm.

I. Factual Background

On 28 July 2011, the trustees of Wake Technical Community College entered into a prime contract with Choate for the construction of the Northern Wake Campus

Parking Deck, located in Raleigh, Wake County, North Carolina. The parking deck construction (hereinafter, "the project") was a public project, and subject to a comprehensive set of statutes and regulations regarding the procurement of services and materials and the performance of the project. The project was overseen by the North Carolina Department of Administration and the State Construction Office.

Choate solicited bids for drilled shafts and concrete piers for the project. Southeast Caissons, LLC ("SEC") submitted two bid proposals to Choate. Brian Kinlaw ("Mr. Kinlaw") served as Choate's project manager for the construction of the parking deck. After SEC submitted its second bid proposal, Mr. Kinlaw corresponded via a series of emails with Keisha West ("Ms. West"), a managing member of SEC, regarding the terms of the proposed subcontract with SEC for the drilling of shafts and the installation of concrete caissons and piers to support the weight and structure of the project.

On 6 October 2011, Mr. Kinlaw emailed Ms. West an electronic copy of Choate's proposed subcontract and informed her she would also receive two hard copies by mail. The subcontract offered a lump sum payment of $438,000.00 to SEC for its work on the project, subject to contingencies, and incorporated the terms of the prime contract between Choate and Wake Technical Community College. The subcontract also contained a clause in Article X, Section 3(b) entitled "Additional Dispute Resolution Provisions." This clause stated: "Venue for any arbitration, settlement

meetings or any subsequent litigation whatsoever shall be in the city of Contractor's office as shown on page 1 of the Subcontract." Choate's office was shown on page 1 of the subcontract as being located in Raleigh, Wake County, North Carolina.

Mr. Kinlaw subsequently requested that Ms. West sign and return the proposed subcontract. He explained that Choate required a signed subcontract before it would allow SEC to begin work on the project. Ms. West informed Mr. Kinlaw that SEC "had some small changes to the subcontract but generally found the subcontract agreeable." Ms. West emailed the changes to Mr. Kinlaw and he discussed the changes with his superiors.

On 24 October 2011, Choate and SEC held a "pre-drill" meeting on-site, where the parties reached an oral agreement on where "rock payment would begin in a drilled shaft." On 26 October, Ms. West emailed Mr. Kinlaw SEC's "Proposed Addendum" to the subcontract. The "Proposed Addendum" stated "[SEC] hereby accepts the terms of the attached Subcontract, *subject to and conditioned upon* [Choate's] acceptance of the terms set forth in this Addendum[.]" (emphasis supplied).

On 27 October, Mr. Kinlaw and Ms. West engaged in a two-hour-long telephone call, during which they discussed the subcontract and the "Proposed Addendum." Following this telephone call, Mr. Kinlaw and Ms. West continued to exchange emails and telephone calls, in which they sought to reach an agreement on and finalize the terms contained in the subcontract and "Proposed Addendum." The correspondences

included an email from Mr. Kinlaw on 2 November, in which he indicated the parties "got closer" to reaching a final agreement on the additional issues and he "hope[d] to have this resolved with [Ms. West] ASAP." Ms. West replied with an email on 7 November which read: "I just wanted to touch base with you to check the status of the Subcontract Agreement. I would like to get this contract nailed out [sic] today prior to drilling, if possible." SEC began drilling the first shaft that same day, while the amended subcontract and "Proposed Addendum" remained unsigned by both SEC and Choate.

Despite SEC beginning to drill on-site on 7 November 2011 without a signed written subcontract, Choate and SEC, through Mr. Kinlaw and Ms. West, continued to discuss the terms of the subcontract. On 15 November, Mr. Kinlaw sent an email to Ms. West, which read: "I tried calling yesterday and today . . . to speak further about the Subcontract. . . . Sending this just in case it's not reaching you." Mr. Kinlaw sent another email to Ms. West on 18 November seeking to discuss "further definition and clarification" of certain terms in the proposed subcontract.

The parties continued discussing the terms of the proposed subcontract into December 2011. In an email dated 19 December 2011, Mr. Kinlaw wrote to Ms. West:

> Further to my email below from 12/1/11 following the collaborative effort by both of our offices to reach concurrence on Contract terms, no further response has been received from Southeast Caissons — namely, a signed and executed copy of the Subcontract. In making another attempt, attached you will find a revision to the

> Subcontract that includes all modifications agreed-upon as clarified and documented previously.

In her supplemental affidavit, Ms. West stated she "could not sign the proposed subcontract because we were not in agreement."

Mr. Kinlaw sent a follow-up email to Ms. West on 30 December, in which he stated he wanted to "discuss several urgent paperwork issues[.]" Mr. Kinlaw also reminded Ms. West he had re-sent the proposed subcontract document for her to execute and return to Choate.

Mr. Kinlaw emailed to SEC another modified proposed subcontract on 12 January 2012. He stated in the email: "I am re-sending the subcontract to you that includes all modifications agreed-upon as clarified and documented previously and has been cleaned up to remove the handwritten notes on Exhibits B and C. Please execute and return this document immediately." Ms. West averred in her supplemental affidavit that Mr. Kinlaw considered this a "finalized subcontract," but it contained "modifications which were not acceptable to [SEC]." Ms. West did not respond to Mr. Kinlaw's correspondence, and SEC continued to perform work on the construction project. SEC drilled the last shaft on the project on 27 January 2012. The proposed "finalized subcontract," as modified and sent by Mr. Kinlaw on 12 January 2012, remained unexecuted by both parties.

On 23 February 2012, Ms. West mailed Mr. Kinlaw a letter to notify him SEC's work had been completed and to request payment from Choate. Acknowledging she

had not signed the proffered subcontract as yet, Ms. West stated: "We understand Choate has maintained that a contract must be signed prior to any payment to [SEC], but it is undeniable that no matter what our disagreement might be on the amount due to [SEC] there is some amount due." In his response letter to Ms. West, Mr. Kinlaw informed her Choate would be unable to pay SEC until someone from SEC submitted a payment application to Choate.

SEC filed a complaint on 23 February 2015 against Choate, Falcon Engineering, Inc. ("Falcon"), BBH Design, P.A. ("BBH"), and Kimley-Horn and Associates, Inc. ("Kimley-Horn") in Forsyth County. Defendants Falcon, BBH, and Kimley-Horn are not parties to this appeal, and the allegations asserted in SEC's complaint pertaining to these defendants are not addressed. SEC's complaint against Choate alleged claims for: (1) breach of contract; (2) *quantum meruit*; (3) fraud in the inducement; (4) unfair and deceptive trade practices; and (5) punitive damages.

Choate responded and filed an answer, motion to dismiss, counterclaims, and crossclaims. Choate asserted four separate bases for the trial court to grant its motion to dismiss: (1) motion to dismiss for breach of a condition precedent to maintain a claim/or waiver of the right to maintain a claim and for failure to state a claim for relief, *i.e.* compliance with the condition precedent; (2) motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6); (3) motion to dismiss or

alternatively for change of venue; and (4) motion to dismiss for failure to establish that "rock" was encountered beyond bearing elevation.

Choate's motion for change of venue was based upon the language contained in Article X, Section 3(b) of the unsigned subcontract, which provided: "Venue for any arbitration, settlement meetings or any subsequent litigation whatsoever shall be in the city of Contractor's office as shown on page 1 of the Subcontract."

SEC voluntarily dismissed without prejudice its claims against defendants BBH and Kimley-Horn on 30 July 2015. Choate's motion to dismiss or alternatively for change of venue was heard in Forsyth County Superior Court on 27 July 2015. Both Mr. Kinlaw and Ms. West submitted affidavits, which were filed in anticipation of this hearing.

The trial court entered a written order denying Choate's motion for change of venue on 11 August 2015. The trial court's order stated, in part:

> IT APPEARS to the Court from Brian Kinlaw's affidavit filed by movants and the Affidavit of Keisha West and Supplemental Affidavit of Keisha West filed by plaintiff Southeast Caissons, LLC (SEC), a managing member of SEC, that the Subcontract attached to defendants [sic] Choate's Answer as Exhibit A was never executed by SEC or Choate . . . and is therefore not binding on the plaintiff, and in particular the venue selection clause of Article X of the unexecuted Subcontract; and,
>
> IT FURTHER appears to the Court . . . that [SEC] is a Forsyth County, Kernersville, North Carolina Corporation and venue is proper in Forsyth County . . . as the plaintiff maintains its principal office in Forsyth

County and maintains a place of business in Forsyth County[.]

Choate gave timely notice of appeal to this Court.

## II. Issues

Defendant Choate argues the trial court erred by: (1) entering an order, which was fatally overbroad; and (2) denying Choate's motion for change of venue pursuant to Rule 12(b)(3).

## III. Standard of Review

"[Q]uestion[s] of venue . . . [rest] within the sound discretion of the trial judge, and [are] not subject to review except for manifest abuse of such discretion." *Farmers Coop. Exch., Inc. v. Trull*, 255 N.C. 202, 204, 120 S.E.2d 438, 439 (1961) (citations omitted). Under an abuse of discretion standard, this Court reviews the trial court "to determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Printing Servs. of Greensboro, Inc. v. Am. Capital Grp., Inc.*, 180 N.C. App. 70, 74, 637 S.E.2d 230, 232 (2006) (citation omitted), *aff'd per curiam*, 361 N.C. 347, 643 S.E.2d 586 (2007).

## IV. Analysis

## A. Jurisdiction

Defendant Choate's appeal is interlocutory. An order or judgment is interlocutory if it does not settle all the pending issues and "directs some further proceeding preliminary to the final decree." *Heavner v. Heavner*, 73 N.C. App. 331,

332, 326 S.E.2d 78, 80 (citation omitted), *disc. review denied*, 313 N.C. 601, 330 S.E.2d 610 (1985). The trial court's order denying Choate's motion for change of venue is interlocutory, because it does not dispose of all issues of the case and is not a final disposition for any party.

An interlocutory order is generally not immediately appealable. An exception to this rule exists if the appellant shows the order affects a substantial right, which will be lost if the case is not reviewed prior to the issuance of a final judgment. N.C. Gen. Stat. §§ 1-277(a) (2015), 7A-27(b)(1) (2015); *Guilford Cnty. ex rel. Gardner v. Davis*, 123 N.C. App. 527, 529, 473 S.E.2d 640, 641 (1996).

This Court has held "where the issue pertains to applying a forum selection clause, our case law establishes that [a party] may nevertheless immediately appeal the order because to hold otherwise would deprive him of a substantial right." *Hickox v. R&G Grp. Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003) (citation omitted); *see also Parson v. Oasis Legal Fin., LLC*, 214 N.C. App. 125, 128, 715 S.E.2d 240, 242 (2011) (citation omitted); *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566 n.1, 566 S.E.2d 160, 161 n.1 (2002); *L.C. Williams Oil Co. v. NAFCO Capital Corp.*, 130 N.C. App. 286, 288, 502 S.E.2d 415, 417 (1998) (citation omitted). The trial court's denial of Choate's motion for change of venue affects a substantial right, and we proceed to the merits of Choate's claims.

B. Order Denying Choate's Motion for Change of Venue

Choate argues the trial court erred by entering an order denying Choate's motion for change of venue because: (1) the trial court's order was fatally overbroad; and (2) the order was based upon a misapprehension of law.

### 1. Venue Selection Clauses

"Generally in North Carolina, when a jurisdiction is specified in a provision of contract, the provision generally will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive." *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 644, 574 S.E.2d 31, 34-35 (2002) (citation and internal quotation marks omitted) (noting mandatory venue selection clauses have contained words such as "exclusive," "sole," or "only" to indicate that the contracting parties intended to make jurisdiction exclusive).

Here, the venue selection clause stated: "Venue for any arbitration, settlement meetings or any subsequent litigation whatsoever shall be in the city of Contractor's office as shown on page 1 of the Subcontract." The clause at bar does not contain any words to indicate a mandatory venue selection clause. The clause is clearly non-mandatory. *Id.* The trial court correctly determined venue was proper in Forsyth County, where SEC "maintains its principal office[.]"

### 2. Choate and SEC Subcontract

The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms. *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds."). "Generally, a party seeking to enforce a contract has the burden of proving the essential elements of a valid contract[.]" *Orthodontic Ctrs. of Am., Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002) (citation omitted).

The parties agreed at oral argument this contract is not subject to the statute of frauds. Although only those contracts subject to the statute of frauds are required to be in writing and signed by the party to be charged, *see* N.C. Gen. Stat. § 22-2 (2015), this Court held the *absence* of a signed, written instrument is evidence of the parties' intentions not to be bound by the proposed contract. *Zinn v. Walker*, 87 N.C. App. 325, 332, 261 S.E.2d 314, 318 (1987) (citations omitted), *disc. review denied*, 321 N.C. 747, 366 S.E.2d 871 (1988).

"If mutual assent is purportedly manifested in a written instrument but a question arises as to whether there was a genuine meeting of the minds, the court must first examine the written instrument to ascertain the parties' true intentions." JOHN N. HUTSON, JR. & SCOTT A. MISKIMON, NORTH CAROLINA CONTRACT LAW § 2-4, at 61, § 2-7-1, at 68 (2001) ("Failing to memorialize an oral contract does not

invalidate the agreement but instead merely affects the mode of proving the terms of the contract.").

Choate argues the trial court was only authorized to make a limited determination on whether the venue selection clause was enforceable when ruling on its motion for change of venue. Choate contends the trial court's order exceeded the scope of this authority, and is fatally overbroad, because the order is "not limited to whether the parties agreed to select a venue for adjudication of [p]roject-related disputes." Choate also asserts the trial court abused its discretion by basing its order on a "misapprehension of law." We disagree.

The trial court's order denied Choate's motion for change of venue based, in part, on the finding that "the Subcontract . . . was never executed by SEC or Choate . . . and is therefore not binding on the plaintiff, and in particular the venue selection clause of Article X of the unexecuted Subcontract[.]" Choate argues this "blanket proclamation" effectively "removes the matter of contract formation from the finder of fact, [and] at a minimum it will result in prejudice to [Choate] at trial on the underlying actions." We do not interpret the trial court's language to be as sweeping or draconian as Choate suggests. As explained below, the trial court's order does not resolve the underlying issues alleged in SEC's complaint, nor does it define the terms of the agreement between Choate and SEC.

"The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968) (citations omitted). "It is a general rule of contract law that the intent of the parties, where not clear from the contract, may be inferred from their actions." *Branch Banking & Trust Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 9, 332 S.E.2d 186, 192 (1985), *appeal withdrawn*, 316 N.C. 192, 341 S.E.2d 587 (1986). *See Zinn*, 87 N.C. App. at 332, 261 S.E.2d at 318 (citations omitted) ("[T]he parties' intentions[,] which are controlling in contract construction, may be construed from the terms of the writings and the parties' conduct." (citations omitted)).

"One of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing." *Chavis v. S. Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E.2d 425, 427 (1986) (citations omitted). Here, Choate prepared the proposed subcontract using its own form. Any ambiguities in the proposed subcontract are to be construed against Choate. *Id.*

Our Supreme Court has long held "[f]or an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (citations and internal quotation marks omitted), *reh'g denied*, 354 N.C. 75, 553

S.E.2d 75 (2001). *See also Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 912 (1998); *Normile v. Miller*, 313 N.C. 98, 108, 326 S.E.2d 11, 18 (1985); *Croom v. Goldsboro Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921).

"[I]n order that there may be a valid and enforceable contract between parties, there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." *Quantum Corporate Funding, Ltd. v. B.H. Bryan Bldg. Co., Inc.*, 175 N.C. App. 483, 490, 623 S.E.2d 793, 798-99 (2006) (citations and quotation marks omitted) (holding defendant company did not agree to jurisdiction in New York when it submitted a counteroffer of the amount owed to plaintiff because there was no acceptance of counteroffer).

Here, the trial court's order merely, and correctly, reflects a quintessential tenet of contract law in North Carolina and elsewhere — contract interpretation is governed by mutual assent and the intent of the parties. *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 631, 518 S.E.2d 205, 209, *disc. review denied*, 351 N.C. 186, 541 S.E.2d 709 (1999). The trial court properly concluded the parties did not reach mutual assent on, and did not intend to be bound by, the terms of Choate's proposed subcontract, including the venue selection clause, based on their conduct, including: (1) Mr. Kinlaw continued to modify the terms of the proposed subcontract through January 2012, while SEC's work was underway; (2) Choate, via its representatives, articulated numerous times it required a *signed* subcontract from SEC, yet allowed

SEC to begin and complete the work without the proposed agreement being signed; (3) in December 2011, Ms. West refused to sign the proposed subcontract because SEC and Choate had not yet reached a mutual agreement on the final terms of the subcontract; (4) Mr. Kinlaw sent to Ms. West a purported "finalized subcontract," but this document contained additional modifications; (5) at a 1 February 2012 meeting, after the work had been completed and Choate had received the benefits of SEC's work, Mr. Kinlaw informed Ms. West that Choate could not pay any money to SEC "until a contract was agreed to and executed[;]" (6) Ms. West averred in her affidavit "the written subcontract document was never agreed to by the parties [and] there was no meeting of the minds between the parties as to the written subcontract;" and, (7) the proposed subcontract was never signed by either party, despite numerous ongoing correspondences over many months between Ms. West and Mr. Kinlaw regarding the importance of reaching a final agreement on the terms of the subcontract in order for SEC and Choate to sign the subcontract as a written memorialization of the parties' agreement.

> Although the purpose of a signature is to show assent, assent may be shown where the party who failed to sign the writing accepted its terms and acted upon those terms. . . . However, if under the circumstances the parties are merely negotiating while trying to agree on certain terms and the parties are looking to a writing to embody their agreement, no contract is formed until the writing is executed and . . . the offeree's acceptance is properly communicated to the offeror.

HUTSON, JR. & MISKIMON, *supra*, § 2-7-1, at 68-69.

Other jurisdictions have similarly held evidence of the parties' intent to enter into a "final definitive agreement" may be utilized to determine the extent of the parties' agreement. *See Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir. 1989) (holding "as a matter of law parties who make their pact 'subject to' a later definitive agreement have manifested an objective intent not to be bound"); *Knight v. Sharif*, 875 F.2d 516, 525 (5th Cir. 1989) (holding "[t]he parties' use of the term 'final definitive agreement' also leads to the distinct conclusion that what came before . . . was neither final nor definitive"); *Conley v. Whittlesey*, 888 P.2d 804, 811 (Idaho Ct. App. 1995) (holding "agreement in principle" language did not irrevocably commit parties to settlement where parties agreed to memorialize intentions and mutual assent in a formal written contract).

The trial court's order denying Choate's motion for change of venue does not preclude either SEC or Choate from subsequently showing the parties had a contract implied in fact to the jury at trial on the underlying actions. *Snyder*, 300 N.C. at 217, 266 S.E.2d at 602 ("An implied contract is valid and enforceable as if it were express or written. . . . Whether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." (citations omitted)). "A valid contract may be implied in light of the conduct of the parties and under circumstances that make it reasonable to presume the parties intended to contract with each other." HUTSON, JR. & MISKIMON, *supra*, § 2-5, at 61-63 (noting "[w]hether

- 16 -

a party's conduct is a manifestation of assent is ordinarily a question of fact to be resolved by the trier of fact[]" and "[o]nly rarely do courts rule as a matter of law that the parties' course of conduct created an implied contract[]").

The trial court's order simply concludes Choate's proffered written subcontract was never executed by either party and its terms contained therein are not binding on the parties. Both parties' conduct demonstrates their intent *not* to be bound by the proposed written subcontract. As such, the venue selection clause is unenforceable against SEC. *Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 488, 369 S.E.2d 122, 126 (citations omitted) (noting "the parties' intentions control, and their intentions may be discerned from both their writings and actions[]"), *disc. review denied*, 323 N.C. 370, 373 S.E.2d 556 (1988).

The trial court considered the evidence, including the extensive written correspondences between the parties, the unexecuted subcontract, the affidavits of Mr. Kinlaw and Ms. West, and the conduct of the parties in order to determine whether the parties had manifested a mutual assent and intent to be bound by the terms of the unsigned subcontract. The trial court ultimately, and correctly, determined there was no *aggregatio mentium*, or "meeting of the minds," on the proposed agreement, and the parties did not intend to be bound by the terms of the unexecuted subcontract, and its venue selection clause. Choate has failed to carry its burden to show the trial court abused its discretion by denying its motion for change

of venue.  Choate's argument is overruled.  The trial court's order denying Choate's motion for change of venue is affirmed.

### V. Conclusion

The trial court's order denying Choate's motion for change of venue is not fatally overbroad.  The trial court reviewed the extensive evidence and arguments presented by Choate and SEC to decipher the intent of the parties.  The trial court concluded the parties did not intend to be bound by Choate's unsigned proposed subcontract.  Even if the clause were applicable, the venue selection clause contained within the unsigned subcontract prepared by Choate is not a mandatory venue selection clause to make Wake County the sole proper venue.  The trial court did not abuse its discretion by denying Choate's motion for change of venue.

This  interlocutory appeal of a discretionary ruling by the trial court on a non-mandatory venue provision contained within an unexecuted subcontract prepared by Choate is reviewed under an abuse of discretion standard on appeal.  The trial court's order is affirmed.  This case is remanded for further proceedings on the merits.

AFFIRMED.

Chief Judge McGEE and Judge INMAN concur.