Hocutt v. Hocutt, 2019 NCBC 24.

STATE OF NORTH CAROLINA

WILSON COUNTY

JOEY MICHAEL HOCUTT, in his individual capacity and, alternatively, in his capacity as an officer, manager, director, and shareholder of TRIPLE J PRODUCE, INC.; HOCUTT FARMS, INC.; and HOCUTT BROTHERS, INC.; and derivatively on behalf of TRIPLE J PRODUCE, INC.,

Plaintiff,

v.

JAMES MICHAEL HOCUTT; and MICHAEL JAY HOCUTT, in their individual capacities and in their respective capacities as officers, directors, managers and/or shareholders of TRIPLE J PRODUCE, INC.; HOCUTT FARMS, INC.; and HOCUTT BROTHERS, INC.; TRIPLE J PRODUCE, INC.; HOCUTT FARMS, INC.; and HOCUTT BROTHERS, INC.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1500

**ORDER AND OPINION ON DEFENDANT JAMES MICHAEL HOCUTT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

THIS MATTER comes before the Court on Defendant James Michael Hocutt's ("Mike") Motion to Enforce Settlement Agreement. ("Motion", ECF No. 30.) The matter has been fully briefed and is ripe for determination. Pursuant to Rule 7.4 of the General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"), the Court decides the Motion without a hearing.

THE COURT, having reviewed the Motion, the briefs and evidence submitted in support of and in opposition to the Motion, and other appropriate matters of record, concludes that the Motion should be DENIED.

*A. Factual Background of the Parties' Disputes and Settlement Negotiations*

1.      A party may seek to enforce a settlement agreement by dismissing the original action and bringing a new action to enforce the agreement, or by filing a motion in the original action. When a party seeks to enforce the settlement agreement by motion in the original action, the motion is treated as a motion for summary judgment. *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009); *Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *7 (N.C. Super. Ct. Jan. 29, 2016) (citing *Hardin*). Accordingly, the following facts, drawn from the parties' evidentiary filings, are undisputed.[1]

2.      This case arises from a long-simmering dispute between Mike, Plaintiff Joey Michael Hocutt ("Joey"), and Defendant Michael Jay Hocutt ("Jay") over control of three closely-held, family owned, businesses: Hocutt Farms, Inc. ("Hocutt Farms"), Hocutt Brothers, Inc. ("Hocutt Brothers"), and Triple J Produce, Inc. ("Triple J") (collectively, the "Hocutt Entities"). Defendant Mike is the father of Joey and Jay.

3.      From the summer of 2017 to October 2018, prior to the filing of this lawsuit, the parties engaged in extensive negotiations in an attempt to resolve their disputes short of litigation. In the negotiations, Mike was represented by attorneys Allen Thomas, Julie Williams ("Williams"), and Tom Sallenger; Joey was represented by attorney Paul Flick ("Flick"); Jay was represented by attorney Will Farris ("Farris"); and Triple J was represented by attorney Dan Boyce ("Boyce").

---

[1] The facts regarding the negotiation process are drawn almost exclusively from the Affidavit of Paul T. Flick, (ECF No. 58), and the Affidavit of R. Daniel Boyce, (ECF No. 54), the only affidavits submitted by the parties from the attorneys involved in the settlement negotiations discussed herein.

4. Because of the tensions between Mike, Joey, and Jay, the attorneys met together to negotiate without their clients. The specific issues underlying potential resolution of the dispute were very complex, so the attorneys initially discussed only potential frameworks for a settlement. (ECF No. 58, at ¶¶ 7–9.) They subsequently exchanged more specific settlement terms and circulated draft settlement agreements. The attorneys used these draft settlement agreements as a means of discussing with their respective clients the various terms that were being discussed by the lawyers. (*Id*. at ¶¶ 9–10.) The draft agreements served as "written memoranda of what each of the lawyers was going to try to get approval from their clients working towards an agreement that could get signed." (*Id*. at ¶ 10.) The draft settlement agreements were not offers from one party to another, and none of the draft agreements were ever signed. (*Id*.) Although the attorneys made progress resolving the disputes, the parties never came to a "meeting of the minds . . . as to all essential terms or components of the proposed drafts," and ultimately the parties did not reach a settlement. (*Id*. at ¶ 12.)

5. In September 2018, the parties circulated the last draft settlement agreement ("Last Draft"). (ECF No. 34 [SEALED].)[2] Mike and Jay communicated to their respective counsel that they accepted the terms of the Last Draft as a settlement of the disputes. (Aff. of James Michael Hocutt, Settlement Agr. ECF No. 30.2, at ¶ 8; ECF No. 43, at ¶ 9.) Flick met with Joey to review the Last Draft. Joey rejected the terms of the Last Draft, and provided Flick with additional terms that Joey wanted

---

[2] Triple J's attorney, Boyce, never received the Last Draft, nor was he informed that any final settlement had been reached. (ECF No. 54, passim.)

included in a final settlement. (Aff. of Joey Michael Hocutt, ECF No. 59, at ¶¶ 15–16; ECF No. 58, at ¶ 13.)

6. On September 24, 2018, Flick sent an email to the other attorneys involved in the negotiations notifying them that Joey had rejected the terms of the Last Draft and was now demanding additional terms. (ECF No. 58 at Ex. B.) Mike's counsel responded that "[w]e most likely have reached an impasse but will let you know once we have spoken to Mike." (*Id*.) The record does not contain any response from Jay's attorney.

7. None of the attorneys involved in the negotiations responded to Joey's rejection of the Last Draft by claiming that Joey had already agreed to its terms and was reneging on such agreement. (ECF No. 58, at ¶ 17; ECF No. 54, at ¶ 8.) To the contrary, the attorneys continued to negotiate over the terms, but those attempts failed to produce a final settlement. (ECF No. 58, ¶¶ 15–15 [*sic*.][3].) On October 15, 2018, Flick sent an email to the attorneys outlining a set of new terms demanded by Joey in order to agree to a settlement. (*Id*. at Ex. B.) On October 17, 2018, the day this lawsuit was filed, Williams sent an email to Flick stating that "Mike does not agree to the current proposal on the table" and suggested she would communicate any further ideas "to try to get this settled." (*Id*.)

---

[3] Flick's Affidavit contains two paragraphs numbered 15 and two paragraphs numbered 16. The citation refers to the first paragraphs numbered 15 and 16, and to the second paragraph numbered 15 which actually is the 17th paragraph in the Affidavit.

*B. Procedural Background*

8.     On October 17, 2018, Joey filed this action, and it was designated to the North Carolina Business Court and assigned to the undersigned the following day. (Compl., ECF No. 3; Design. Order, ECF No. 1; Assign. Order, ECF No. 2.)

9.     Mike filed the Motion on February 1, 2019 along with a Brief in Support of the Motion, (ECF No. 31), supporting affidavits, and the Last Draft.

10.     On February 12, 2019, Jay filed his Response requesting that the Court grant the Motion, along with Jay's affidavit in support of the Motion.  (Jay Hocutt Resp., ECF Nos. 42, 76; Jay Hocutt Aff., ECF No. 43.)

11.     On February 20, 2019, Triple J filed its Response opposing the Motion, along with the Boyce Affidavit.  (Triple J Resp., ECF No. 53.)  On the same date, Joey filed a Response in opposition to the Motion, (ECF No. 57), a brief in opposition to the Motion, (ECF No. 61), the Flick Affidavit, and two separate affidavits from Joey. (Joey Hocutt Affs., ECF Nos. 59, 60.)

12.     Mike filed a reply in support of the Motion.  (Reply, ECF No. 65.)  The Motion is ripe for determination.

*C. Legal Standards*

13.     "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.'" *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)).  "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83,

530 S.E.2d 829, 835 (2000). The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The Court must view the evidence in the light most favorable to the non-movant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835.

14. "A settlement agreement is a contract governed by the rules of contract interpretation and enforcement." *Williams v. Habul*, 219 N.C. App. 281, 289, 724 S.E.2d 104, 110 (2012) (citing *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000)).

> In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms. Mutuality of agreement is indispensable; the parties must assent to the same thing in the same sense, *idem re et sensu*, and their minds must meet as to all the terms.

*Dodds v. St. Louis Union Trust Co.*, 205 N.C. 153, 156, 170 S.E. 652, 653 (1933) (internal citations omitted); *see also Washington v. Traffic Markings, Inc.*, 182 N.C. App. 691, 697, 643 S.E.2d 44, 48 (2007) (quoting *Dodds*). "For an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (internal quotation marks and citations omitted). "To determine whether mutual assent exists, a court considers the parties' words and acts from the perspective of a reasonable person." *Baker v. Bowden*, 2017 NCBC LEXIS 31, at *9

(N.C. Super. Ct. Apr. 3, 2017) (citing *Howell v. Smith*, 258 N.C. 150, 153, 128 S.E.2d 144, 146 (1962)).

15. "Generally, a party seeking to enforce a contract has the burden of proving the essential elements of a valid contract[.]" *Se. Caissons, LLC v. Choate Constr. Co.*, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (quoting *Orthodontic Ctrs. of Am., Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002)) (quotation marks omitted).

*D. Analysis*

16. The Court has carefully reviewed the evidence submitted and the arguments of counsel and concludes that Mike has wholly failed to establish the existence of undisputed facts showing that the Last Draft was a full and final settlement, which would entitle him to enforce the terms of the Last Draft. While the Court believes that the Motion is close to frivolous, and that undisputed facts arguably would entitle Plaintiff to judgment as a matter of law rather than Mike, at a minimum virtually all dispositive facts are in dispute.

17. In the Motion, Mike contends that the parties reached a final and binding settlement of the claims at issue in this case, the terms of which are "memorialized" in the Last Draft. (ECF No. 31, at p. 2.) Mike admits that Joey refused to sign the Last Draft, and that Flick communicated Joey's rejection of the Last Draft, but maintains that a valid agreement was created nonetheless by Mike and Jay's acceptance of the Last Draft. (ECF No. 31, at p. 2; Mike Hocutt Aff., ECF No. 30.2, at ¶ 11.)

18.     Mike has not met his burden of proving that the Last Draft was a valid and enforceable contract.  Mike has not provided affidavits or any other competent evidence from Mike's or Jay's attorneys regarding the negotiations or the Last Draft.  There is no evidence that any of the counsel involved in the negotiations believed the Last Draft was an offer of final settlement from Joey.  In fact, Mike has provided no evidence regarding how or when, specifically, the Last Draft was provided to Mike or Jay.  Mike claims in his unverified Motion that Flick "circulated" the Last Draft, but does not provide any email or other communications from Flick regarding his intent in circulating the document.  Flick contends that the attorneys circulated the draft settlement agreements as memoranda and not firm offers.  Mike has not presented evidence that Flick intended the Last Draft, unlike the many other draft agreements circulated, to be a complete and final offer of settlement.  At minimum, there is a factual dispute as to this issue because Flick states that the written drafts of proposed settlement agreements were not offers.  (ECF No. 58, at ¶ 10.)

19.     On the other hand, the evidence indicates that Mike's counsel, Williams, understood the Last Draft was not a final or firm proposal to settle.  When Flick communicated Joey's refusal to accept the terms of the Last Draft, Williams did not claim that Joey was reneging on a firm offer, but instead responded that the parties appeared to be at impasse.  Williams continued to negotiate with Flick and referred to Joey's new terms communicated by Flick on October 15, 2018, as "the current proposal on the table."  (ECF No. 58 at Ex. B.)

20.     The evidence also is undisputed that the Last Draft was not provided to the attorney for Triple J, a necessary party to a final settlement.

21.     In addition, the evidence in the record from attorneys who participated in the negotiations is that there was never a meeting of the minds as to all of the terms essential to have a final and binding settlement.  Mike provided no evidence that his attorney or Jay's attorney believed that the parties had a meeting of the minds.

22.     Finally, Mike argues that an email sent by Flick on December 10, 2018 to the counsel representing the parties in this lawsuit contains an admission that the Last Draft was a firm settlement proposal.  (ECF No. 31, at pp. 3–4; Dec. 10, 2018 Email, ECF No. 30.5)  Flick attached two documents to the email titled "Scan2018-11-09Offer.pdf" and "Global SA Hocutt15.doc."[4] (ECF No. 30.5.)  Mike claims that Flick's reference to the Last Draft as the "last global draft," and Flick's statement that "the last global draft fell apart over the introduction by Joey of [new terms]," is a concession that the Last Draft was a firm offer.  (ECF No. 31, at p. 4.)  Mike does not explain in his brief, and the Court does not understand, how Flick's statement constitutes an admission that the Last Draft was an offer of settlement, as opposed to another draft settlement agreement intended as a memoranda for purposes of advancing the negotiations.  The Court concludes this argument is without merit.

23.     The Court, considering the evidence presented in a light most favorable to the non-movant(s), concludes that there are significant genuine issues of material

---

[4] The document titled "Global SA Hocutt15.doc." was a copy of the Last Draft.

fact in dispute and that Mike is not, under these facts as presented, entitled to judgment as a matter of law on his Motion. Accordingly, the Motion should be DENIED.

THEREFORE, IT IS ORDERED that the Motion is DENIED.

This, the 4th day of April, 2019.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases